IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

               v.                                23-CR-99-V

SIMON GOGOLACK, et al.,

                    Defendants.

---

## GOVERNMENT'S MOTION TO RESCIND THE REFERRAL ORDER AND TO SCHEDULE A TRIAL DATE

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Nicholas T. Cooper, Casey L. Chalbeck, Caitlin M. Higgins, and Joseph M. Tripi, Assistant United States Attorneys, respectfully move this Court to rescind the Referral Order and to hold a status conference for the purpose of scheduling a trial date.

## PRELIMINARY STATEMENT

On April 24, 2025, after a lengthy oral argument, Magistrate Judge Jeremiah J. McCarthy stated: "*And if anybody wants to suggest to Judge Vilardo that he take the entire case back for supervision of pretrial proceedings, whether or not that would make him happy, it would not make me unhappy but we'll leave it at that.*" Tr. of Proceedings at 77, Apr. 24, 2025 (emphasis added). The Magistrate Court's on-the-record statement and the procedural history of this case compel the conclusion that the interests of judicial economy would be more appropriately served if the District Court exercised greater control of the litigation schedule by handling the case,

either in whole or in part, which would ensure that decisions have the requisite finality to progress this case towards trial.

This is a serious, highly publicized, and strongly contested case involving the murder of a federal witness.  Significant aspects of the case have already filtered up to the District Court and, if past is prologue, the parties will likely continue to routinely seek District Court review of the Magistrate Court's decisions.  Rescinding the referral order for matters moving forward will streamline the litigation, reduce the duplication associated with litigating issues twice (once before the magistrate judge and again before the District Court)—particularly in a case involving six defendants, and will increase continuity assuring the parties, public, and victims that important pretrial decisions have finality.  Thus, by rescinding the referral order resuming supervision of all outstanding pre-trial matters in this case moving forward, the District Court will preserve judicial economy and protect the speedy trial rights of the parties, victims, and the public.

Along these lines, this case has been pending on the Second Superseding Indictment since January 5, 2024, and the Magistrate Court recently bifurcated dispositive and non-dispositive motions, setting the case on the least efficient course possible.  Accordingly, as detailed *infra*, the District Court should schedule a status conference and, after hearing from the parties, schedule a date certain for trial.

For the reasons set forth below, the government requests that the Court rescind the referral order, either in whole or in part, and schedule a trial date.  By setting a trial date now,

this Court will honor the rights protected by the Sixth Amendment, the Speedy Trial Act, and the Crime Victims' Rights Act (the "CVRA").

## PROCEDURAL BACKGROUND

On January 5, 2024, the grand jury charged the defendants in a 28-count Second Superseding indictment.  *See* Sec. Super. Indict., ECF. No. 24.

On January 9, 2024, this Court issued a Text Order of Referral designating the Magistrate Judge to handle "[a]ll  pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B)."  *See* ECF No. 29.

Between January 9th, 10th, and 23rd, the Magistrate Judge arraigned the defendants.  *See* ECF Nos. 29, 31, 36, 45.

On January 19, 2024, defendant Gerace filed a motion seeking to appoint learned counsel, *see* ECF No. 42,[1] and on January 26, 2024, the government filed a response in opposition. *See* ECF No. 50.

---

[1] Defendant Hinkle filed to appoint learned counsel on January 24, 2024.  *See* ECF No. 47.

On February 20, 2024, the government moved for disclosure of the financial affidavits for Gerace and Ermin, *see* Doc. No. 71, the defendants opposed, *see* ECF Nos. 76, 79, and the Magistrate Court denied the government's motion and granted Gerace and Ermin's motions to assign their privately retained attorneys as CJA counsel, *see* ECF Nos. 84, 94, 109, 111.

On February 23, 2024, the government filed notice that it would not seek the death penalty in this case.  *See* ECF No. 75.  The government's decision not to seek the death penalty terminated Gerace and Ermin's statutory right to learned counsel.  *See* ECF No. 42, 94; *see also United States v. Douglas*, 525 F.3d 225 (2d Cir. 2008).

On March 8, 2024, the Magistrate Court formally assigned Gerace's previously retained attorney, Mark Foti, Esq., as CJA counsel.  After assigning Mr. Foti, the Magistrate Court denied the request to appoint second counsel and stated: "Okay.  As you all know, the Government, I think, a week ago today advised that the death penalty issue is now off the table.  *So at this point, I think Mr. Foti is -- is adequate and we'll proceed on that basis*."  *See* Trans., at 3:15-19, 4-5, Mar. 8, 2024 (emphasis added); *see also* ECF No. 94.

On or about June 4, 2024, the government produced voluntary discovery to all defendants.  *See* ECF No. 396 at 7 ("The defendants have had substantial voluntary discovery since June 4, 2024.").

Between on or about June 10, 2024, and October 25, 2024, the parties litigated sanctions motions, which included an appeal and oral argument before the District Court. *See generally*, ECF Nos. 131 to 277.[2]

On November 21, 2024, this Court vacated the Magistrate Court's Decision and Order regarding sanctions against government prosecutors. *See* ECF No. 310. Instead, this Court sanctioned the government by charging five months of time to the government for the purposes of a Sixth Amendment speedy trial analysis. *Id.*

On November 22, 2024, the Magistrate Court held a status conference and, with input from the parties, issued a Scheduling Order requiring all defendants to file both *dispositive and non-dispositive motions* by January 22, 2025. *See* ECF Nos. 312-13.

On January 15, 2025, just seven days before dispositive and non-dispositive motions were due, defendant Gogolack, on behalf of all defendants, filed a motion seeking a thirty-day extension of the motion deadline. *See* ECF Nos. 340, 346. At that time, none of the defendants indicated that a thirty-day extension of time was insufficient time to "sift through the discovery and draft motions." *See* ECF No. 340, at ¶ 4. Moreover, none of the defendants represented that the case was "unusually complex" or a "mega case" such that they needed additional attorneys assigned, despite clear indications that defense counsel for defendants were coordinating their efforts. *See* ECF No. 346-1, at ¶¶ 10-11 ("Counsel for the defendants have also discussed various non-dispositive issues, including potential discovery issues that

---

[2] Other litigation related to this case also occurred during the same intervening period.

may still need to be resolved.  It appears to potentially benefit Mr. Gerace to remain on the same schedule as the other defendants, at least for purposes identifying any remaining discovery issues that may exist." […] "The Amended Scheduling Order that has been issued by this Court provides for a reasonably short extension and keeping Mr. Gerace on the same schedule, for now, will potentially avoid multiple court appearances and duplication of arguments that can be addressed simultaneously by the defendants as long as they remain joined.").

On January 16, 2025,[3] Magistrate Judge McCarthy granted the defendants' joint motion over the government's objection and amended the schedule to require the defendants to file dispositive and non-dispositive motions by February 21, 2025. *See* ECF Nos. 344 (Text Order), 345 (Amended Scheduling Order).

On February 5, 2025, the then-newly sworn Attorney General of the United States issued an internal guidance memorandum to all Department of Justice ("DOJ") employees directing attorneys at the Capital Review Committee to review no-seek decisions in all pending capital eligible cases between January 20, 2021, and January 19, 2025.  The memorandum allotted DOJ attorneys 120 days to complete the internal review process.  The Attorney General's internal guidance memorandum expressly stated that it conferred no

---

[3] Between January 2024 and February 2025, the parties litigated issues related to detention, discovery, and sanctions, and the government produced searchable and organized discovery.  *See generally*, Case No. 23-CR-99 (Docket).

substantive rights upon any defendants, which is consistent with caselaw interpreting DOJ guidance.[4]

On February 6, 2025, the Magistrate Court entered a Text Order, seemingly *sua sponte*, which read:  "Although the government previously stated that it would not seek the death penalty against defendants Gogolack, Gerace, Ermin and Hinkle, the Department of Justice has now decided to reconsider such determinations in all death penalty eligible cases.  In light of that recent development, a conference will be held on 2/10/2025 at 2:00 p.m. in the Genesee Courtroom, 6th Floor West, 2 Niagara Square, Buffalo, NY to discuss whether additional *learned counsel* should be appointed."  *See* ECF No. 350 (emphasis added).

On February 10, 2025, the Court held a status conference and inquired as to whether the government had any information beyond that what was contained in the Attorney General's memorandum.  The government stated that it neither had any additional information to report nor specific information that the status of this case would change. Consistent with the Attorney General's guidance, the government argued that DOJ internal

---

[4] *United States v. Loften*, 518 F. Supp. 839, 856 (S.D.N.Y.1981), *aff'd*, 819 F.2d 1130 (2d Cir. 1987) (internal government policies do not create rights in individual defendants); *see also United States v. Ash*, 464 F. Supp. 3d 621, 632 (S.D.N.Y. 2020), *aff'd*, No. 22-1048-CR, 2022 WL 16955057 (2d Cir. Nov. 16, 2022) (DOJ Manual does not create any rights).  It has been found that the [DOJ capital case] protocol "does not create substantive or procedural rights."  *United States v. Roman*, 931 F.Supp. 960, 964 (D.R.I.1996).  Rather, "[t]he protocol articulates internal administrative procedures to be followed by DOJ personnel...." *Id.* It "provides for 'standards for determination' to guide the death penalty decision making process." *Id.* (citing DOJ Manual, § 9–10.000G).  *Accord: United States v. McVeigh*, 944 F.Supp. 1478, 1483 (D.Colo.1996) ("[T]he decision to seek the death penalty under the Act is a matter of prosecutorial discretion [and] [t]he Protocol [does] not create any individual right or entitlement...."); *cf. United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir.1990), *cert. denied*, 498 U.S. 1015 (1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party.") (citations omitted).

guidance did not create any rights for the defendants and urged the Court to refrain from assigning learned counsel. The government stressed that prematurely and unnecessarily assigning additional attorneys would—as it now has—create more delays in this case. In particular, the government stated, in part:

> [T]he new [defense] attorneys would want to weigh in on what motions to file and how to proceed with the case. And we're now 11 days away from motions being due. I imagine it would take a day or two for the Court to get attorneys. Even if you did it this afternoon, that's leaving ten days for the current attorneys to communicate with the new attorneys, review a very significant amount of discovery that's been provided and make determinations, which, ultimately, right now, we have a no seek. I have no reason to believe that that's going to change, other than the memo saying all decisions are going to be looked at.

*See* Trans. Status Conf., at 10-11, Feb. 10, 2025. In their renewed request for learned counsel, which was previously denied on March 8, 2024, *see* ECF No. 94,[5] counsel for defendant Gerace repeated the same arguments, *see* Trans. Status Conf., at 18-19, Feb. 10, 2025, in support of the request for additional counsel that were previously denied.

Initially, during the February 10, 2025, appearance, the Magistrate Court indicated that he wanted the government to find out what it could about the DOJ's internal reevaluation of the decision not to seek the death penalty, stated that he would defer the decision to assign learned counsel, and decided to hold the February 21, 2025, motions deadline in abeyance pending a status conference on March 5, 2025. *Id.* at 31-38. Specifically, the Magistrate Court stated: "I'm going to hold that February 21st deadline in abeyance, *for a short period*." *Id.* at 14, 37 (emphasis added). Promptly after the Magistrate Court scheduled the March 5, 2025,

---

[5] *See also* Trans. of Proc. at 3:15-19, Mar. 8, 2024, ("Okay. As you all know, the Government, I think, a week ago today advised that the death penalty issue is now off the table. So at this point, I think Mr. Foti is -- is adequate and we'll proceed on that basis.").

status conference, and held the February 21, 2025, deadline to file dispositive and non-dispositive in abeyance, counsel for Gerace immediately pivoted and asked for assignment of second counsel on the basis that this case was a purported "mega case."

Near the end of the February 10, 2025, appearance, which the Magistrate Court scheduled to determine whether certain defendants were *eligible* for the appointment of learned counsel, *see* ECF No. 350, the court assigned additional attorneys to represent defendants Gerace and Ermin "on the basis that [this case is] . . . a mega case." *See* Trans. Status Conf., at 29-30, 42:5-12, Feb. 10, 2025, ("But on the basis that it's a mega case, I will appoint -- and this -- these two attorneys -- *it's been in consultation with the defender's office*, which is also provided for in the CJA plan, I'll appoint -- if they will accept the appointment, Cheryl Meyers Buth for Defendant Gerace and Barry Covert for Defendant Ermin, as additional counsel right now based on the fact that it's a mega case. Not necessarily on the fact that it is death eligible." (emphasis added)).  In that respect, the Magistrate Court also acknowledged, unbeknownst to the government at the outset of the appearance, that he had an ex parte discussion with the Federal Public Defender, who represents defendant Gogolack, which preceded—and was the impetus—for the status conference.  Importantly, the Magistrate Court further advised the defendants that they "should continue[,]" to prepare their motions. *Id.* at 38.

In a follow-up email *shortly* after the February 10, 2025, appearance (on which the government was not copied but later observed when a prospective assigned learned counsel copied the government on email correspondence to the Court), the Magistrate Court stated:

9

I hope (expect?) that this will not come as a surprise to you, but today I appointed Cheryl as co-counsel to Mark Foti for defendant Peter Gerace, Jr., and Barry as co-counsel to George Muscato for defendant John Ermin. [The Federal Public Defender] tells me that she previously checked with each of you as to your availability to serve as learned counsel for these defendants. It may or may not come to that, but I think it makes sense to get you involved at this stage and *to stay on even if the government reconfirms its earlier decision not to seek the death penalty*.  (Emphasis added).

The circumstances of the status conference, and the email the government observed following the status conference, caused the government to develop concerns that the process of persuading the magistrate judge to assign additional attorneys occurred ex parte which, in turn, caused the government to file its motion for reconsideration.  *See* Docket Nos. 355 and 363.[6]

---

[6] The CJA Guidelines do not provide license for the FPD, particularly when the FPD represents a co-defendant in the litigation, to have *ex parte* discussions with the magistrate judge in a particular case about assigning specific learned counsel (and to effectively hand-pick the additional CJA attorneys who will be selected by the magistrate judge to assist the FPD in the defense of the case).  Under the District's CJA Plan, it is the court's responsibility to ensure timely appointment of counsel, and that appointment shall be done "in cooperation with the Federal Public Defender *and the United States Attorney*, will make such arrangements with federal, state, and local investigative and police agencies as will ensure timely appointment of counsel."  CJA Plan at 8 (emphasis added).  The Federal Public Defender's role under the CJA Plan is to "maintain a record of panel attorney appointments and, when appropriate, data reflecting the apportionment of appointments between attorneys from the federal public defender office and panel attorneys."  *Id.* at 20.  The assignments shall ordinarily be made on a rotational basis, *see id.*, except that in a complex or otherwise difficult case appointment may be made "outside the normal rotation to ensure that the defendant has sufficiently experienced counsel."  *Id.*  To be certain, however, the CJA plan, does not contemplate the FPD assuming an advocate role—which occurred on February 10, 2025, when the FPD appeared to argue in favor of assigning CJA counsel—, communicating ex parte with the court pertaining to an internal DOJ guidance memorandum as applied to a specific case in which the FPD is representing a defendant, or advocating for assignment of learned counsel and discuss who may be appropriate to assign as learned counsel based upon an internal DOJ guidance memorandum.  This certainly cannot be the case before the government is even made aware of the court's concerns or has an opportunity to address any such concerns.

Ex parte communications are "disfavored" in criminal cases, and they are "the exception rather than the rule, and they require particular justification."  *United States v. Rechnitz*, 75 F.4th 131, 147 (2d Cir. 2023).  Indeed, in *United States v. Mangione,* the FPD in the Southern District of New York, who does not represent a party, contacted the government and publicly file correspondence recommending learned counsel to avoid ex parte communication with the court only *after relevant court proceedings were conducted*.  *See* 25-cr-00176-MMG, Docket No. 10 (S.D.N.Y.).  Where, as here, the

On February 20, 2025, the government filed a motion for reconsideration regarding the assignment of second CJA counsel to defendants Ermin and Gerace.  *See* ECF No. 355.

On February 27, 2025, the defendants filed a joint response arguing that (1) they are statutorily entitled to the appointment of counsel because of the potential for the death penalty to be sought and (2), even if they were not, "the Court . . . exercised appropriate discretion to appoint two lawyers on a mega-case."  *See* ECF Nos. 359-60.

On March 4, 2025, the government filed its reply, *see* ECF 363, and reiterated that reconsideration was appropriate for several reasons.  Among the government's many arguments were that the Magistrate Court erred in reversing his previous determination that one attorney was sufficient, and that assigning additional attorneys at this late juncture would significantly disrupt proceedings and the progress of the case. The government also argued that assigning additional attorneys only to defendants Gerace and Ermin, when all defendants are charged in Count 1, risked a public perception that certain defendants will be assigned extra resources when similarly situated defendants in this case—and in other serious cases— are not.  *Wheat v. United States*, 486 U.S. 153, 160 (1988) (observing that federal courts have "an independent interest in ensuring [...] that legal proceedings appear fair to all who observe them.").  *See* ECF No. 363.

---

FPD represents a party, undoubtedly more care, not less, should be taken to avoid the circumstances that occurred here and the appearances that the Second Circuit cautioned against in *Rechnitz*.  If, after conducting a status conference, hearing input from the parties, *and then holding that the defendants are entitled to learned counsel*—the Magistrate Court could have contacted the FPD to discuss learned counsel.  That is not what transpired here.

On March 5, 2025, the parties appeared for a status conference.  *See* ECF No. 365 (Minute Entry).  At that time, the Magistrate Court did not permit full argument on the government's motion for reconsideration, *see* ECF Nos. 355 and 396, delayed deciding the issue, and requested an update as to the DOJ's internal review.  The Magistrate Court also indicated that it would keep recently assigned second counsel on the case for the time being but revised its reasoning for keeping them on the case—now holding that they were being kept on as learned counsel.[7]

Additionally, due to revised defense arguments suggesting that they could not file the dispositive motions—the same motions they previously agreed to file on January 22, 2025, and again on February 21, 2025—the Magistrate Court implemented a bifurcated motions schedule over the government's objection whereupon the defendants were required to file *non-dispositive motions only* by April 16, 2025.  *See* ECF Nos. 366 (Second Amended Scheduling Order), 371 (Trans. of Proc., Mar. 5, 2025).  This is true despite the fact that the defendants did not initially request bifurcation and asked only for 30 additional days to file *all* motions as of January 15, 2025. *See* ECF No. 340.

---

[7] The Magistrate Court stated:  "I'm not going to get into any depth on the motion for reconsideration right now," and "you can't advise me yet whether or not the prior no-seek order will be revisited, I'm going to keep the counsel on that I previously appointed.  I may keep them on even if you come back and tell me that you will not seek the death penalty.  I may not.  But as far as I'm concerned, I don't need to decide that today."  *See* Status Conf. Trans., at 10-11, Mar. 5, 2025, ECF No. 371.  Later, the Court reiterated, "I'm not going to hear full oral argument on [the government's motion for reconsideration]," and "I am not addressing the mega case issue at this point. I don't think I need to I'm keeping them in the case at this point, based on the possibility in light of the DOJ memo, that it may be death eligible." *Id.* at 27, 32-33.  The Magistrate Court did not acknowledge its ex parte email to defense counsel wherein it stated explicitly that it thought that it would "make sense" for defense counsel "to stay on even if the government reconfirms its earlier decision not to seek the death penalty."

On April 8, 2025, the government affirmed its decision not to seek the death penalty. *See* ECF No. 395. Specifically, the government advised that "consistent with the status of this case since February 23, 2024, the government reaffirms and notifies Peter Gerace, Jr., John T. Ermin, Simon Gogolack, and Howard Hinkle, Jr. that it will not seek the death penalty in this case." *Id.*

On April 9, 2025, the government filed a motion to schedule a prompt deadline for defendants to file dispositive motions, to remove second counsel, and for oral argument and a decision and order on the government's motion for reconsideration. *See* ECF No. 396.

On April 16, 2025, the defendants filed non-dispositive motions which, in some instances, included (notwithstanding a court order to the contrary) dispositive motions and motions that should be determined by the District Court in the first instance, such as motions to dismiss, motions for a change of vicinage, and motions for severance. *See* ECF Nos. 403-411.

On April 21, 2025, the defendants responded, *see* ECF Nos. 415-417, to the government's motion to schedule a prompt deadline for dispositive motions, and again shifted their argument by claiming—for the first time—that they could not file dispositive motions (which were originally due on January 22, 2025) until all non-dipositive motions have been filed and argued. *See* ECF No. 415 at 1 (Apr. 21, 2025) ("[T]he Court should set a dispositive motions deadline after it has decided all briefing on the non-dispositive motions, preferably after parties have completed their oral arguments."); *but see* ECF No. 340 at ¶¶3-4 (Jan. 15.

2025) ("Mr. Gogolack is seeking a 30-day extension of the deadline for those motions. . . . Simply, I need more time to sift through the discovery and draft motions in this complex, multi-defendant case with extremely stiff penalties attached.").

On April 24, 2025, the Magistrate Court held oral argument on the government's motion for reconsideration and to schedule a prompt deadline for dispositive motions. *See* ECF No. 419; *see also* Tr. of Proc., Apr. 24, 2025. The government implored the Magistrate Court to set a deadline for the defense to file dispositive motions and detailed the delays in the case. The government reiterated that a deadline for dispositive motions was necessary because the defendants have had voluntary discovery since at least June 2024, and dispositive and non-dispositive motions were previously due to be filed on January 22, 2025. *See* Trans. of Proc. at 3-7, Apr. 24, 2025.[8] During colloquy with counsel for defendant Ermin, who stated that "every time Judge McCarthy renders a decision, it goes someplace else for review." *Id.* at 37. Additionally, before any decision was rendered for or against either party, counsel for defendant Ermin stated, "I'm willing to bet that even this decision ends up in front of Judge Vilardo," to which the Magistrate Court responded, "[p]robably." *Id.* at 41:6-9.

---

[8] As to the government's motion for reconsideration of the assignment of assignment of second or learned CJA counsel, the government argued (i) that the defendant's did not have a statutory right to learned counsel; (ii) that the Magistrate Court improperly used an internal DOJ guidance memorandum to confer substantive rights upon the defendants and to reverse its prior March 8, 2024, decision to deny the defense request for the assignment of learned counsel; (iii) that the Magistrate Court did not make any of the findings required under the CJA and interpreting caselaw that there were extenuating circumstances to justify its decision to assign learned counsel to certain defendants; (iv) that, in fact, the case was not "*unusually* complex" or "*extremely* difficult," and that voluminous discovery was insufficient under the multi-factor test set forth under the CJA Guidelines to support a finding of extenuating circumstances. *See* ECF 355, 363; *see also* Trans. of Proc. at 10-11, 15-23, 30-34 (Apr. 24, 2025).

Ultimately, the Magistrate Court did not schedule any deadlines for dispositive motions and held that he was keeping second counsel assigned to defendants Ermin and Gerace—but that he was "not saying I will keep them on for all time. I will give a written analysis. It may not be lengthy." *Id.* at 76-77. The Magistrate Court ended the proceeding by stating: "*And if anybody wants to suggest to Judge Vilardo that he take the entire case back for supervision of pretrial proceedings, whether or not that would make him happy, it would not make me unhappy but we'll leave it at that. Okay, thank you all.*" *Id.* at 77:13-18 (emphasis added).

On April 30, 2025, the government filed a consolidated response, *see* ECF No. 423, to all defense motions, *see* ECF Nos. 403-411.

On May 13, 2025, the Magistrate Court issued a Decision and Order regarding the government's motions for reconsideration of appointment of additional CJA attorneys to certain defendants. *See* ECF No. 432.

On May 21, 2025, the parties argued non-dispositive motions. The Magistrate Court ruled from the bench and decided certain motions, deferred decision on other motions, and scheduled dispositive motions to be filed by August 8, 2025 (approximately 8 months *after* they were originally due to be filed in January 2025). *See* ECF Nos. 433-434; *see also* Trans. Arg., May 21, 2025. The Magistrate Court made no indication as to whether he would notify the District Court that motions for severance, motions to dismiss, and motions for a change of vicinage were ripe and ready for adjudication.

## ARGUMENT

**I.**    <u>**The Court Should Grant the Government's Motion to Rescind the Referral**</u>
<u>**Order.**</u>

The defendants in this case were charged by Second Superseding Indictment on

January 5, 2024.  *See* ECF No. 24.  Days later, on January 9, 2024, this Court issued a Text

Order of Referral designating the Magistrate Judge to handle "[a]ll pre-trial matters in this

case are referred to the above-named United States Magistrate Judge, including all pre-trial

matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section

636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and

recommendation for disposition pursuant to Section 636(b)(1)(B)."  *See* ECF No. 29.  As a

perusal of the docket reveals, there have been a myriad of motions, including  appeals of

magistrate decisions, objections of magistrate decisions, motions to reopen detention hearings

or for release, and for reconsideration, which have often required District Court  review.  *See*

*e.g.*, ECF Nos. 55, 56, 57, 60, 86, 87, 91, 98, 101, 103, 112, 191, 193, 194, 195, 196, 198, 199,

200, 201, 202, 224, 226, 227, 228, 229, 230, 231, 241, 245, 247, 248, 249, 253, 265, 267, 273,

310, 355, 356, 359, 360, 363, 396, 415, 416, 417, 432.


As set forth above, on April 24, 2025, during argument related to the government's

motion seeking to schedule the filing of dispositive pre-trial motions and for reconsideration

of the basis and manner in which the magistrate judge arrived at the decision to assigned

additional attorneys to selected defendants, Magistrate Judge McCarthy stated, "if anybody

wants to suggest to Judge Vilardo that he take the entire case back for supervision of pretrial

proceedings, whether or not that would make him happy, it would not make me unhappy but

we'll leave it at that." Tr. of Proc., at 77:13-18, Apr. 24, 2025.

"The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment.  Any party that desires plenary consideration by the Article III judge of any issue need only ask."  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).  The government is asking for the District Court to rescind the referral order in order to promote judicial economy and protect the speedy trial rights of the defendant, the government, and the public.

The referral order to a magistrate judge is discretionary and this Court may rescind the referral order at any time and resume supervision of pre-trial matters.  Here, the magistrate judge has aptly observed that this case will likely continue to be heavily litigated and has observed that it may be appropriate for the District Court to take the entire case back for pre-trial proceedings.

The government's request is not without precedent.  Indeed, this Court previously recognized, in *United States v. Gendron*, that there are times in high stakes litigation wherein judicial efficiency countenances that the referral to a magistrate judge should be rescinded because of wasted resources associated with "going through a two-step process rather than a one-step process," and that "making extra work for [the magistrate judge] and [the district court judge] doesn't make a whole lot of sense."  *See* 22-CR-109-LJV, Trans. Status Conf. at 3-4, ECF No. 103.  The same is true here.  Thus, to maximize judicial efficiency and to avoid unnecessary delay, the Court should rescind the referral order and resume supervision of this case.

Furthermore, *Gendron* is not the only high-profile murder case in the district wherein the district court has rescinded the referral order, in whole or in part, and handled pretrial proceedings to expedite the case towards trial. In *United States v. Pirk*, a sixteen co-defendant RICO Conspiracy/Murder case that involved an execution-style double-murder and criminal conduct that occurred in multiple states for approximately a decade, Chief Judge Wolford ensured the case proceeded to trial in less than two years by dividing the pretrial motions with the magistrate to expedite the case. *See* 15-CR-142-EAW, ECF No. 436. Specifically, Chief Judge Wolford divided pretrial motions with the magistrate judge and handled, in the first instance, all dispositive pretrial motions related to motions to dismiss, motions for a change of venue, motions for severance, and motions for a bill of particulars. *Id.*

Similarly, Chief Judge Wolford also rescinded the referral order in *United States v. Olbert, et al.*, a multi-defendant narcotics case that involved a drug-related triple murder and multiple arsons, and then directed that "[a]ll further proceedings in this matter shall be before the undersigned." 19-CR-155-EAW, ECF No. 238. Notably, in *Olbert*, Chief Judge Wolford's decision to rescind the referral order occurred approximately 10 months after the Second Superseding Indictment was filed in that case and in the mist of litigation that included dispositive and non-dispositive motions. *See generally*, 19-CR-155-EAW, ECF Nos. 106 to 238.

Here, the case's posture makes it apt for the Court to rescind the referral order. For example, a panoply of defense motions—recently filed under the non-dispositive rubric— included substantive motions that should be determined by the Court in the first instance. *See* ECF Nos. 403-411. The motions included: a motion to change the location of the trial (*i.e.,* vicinage), and consenting to the administrative reassignment of the case to a new district court judge; motions for severance; motions to strike surplusage; and motions to dismiss the indictment.

To be clear, the government understands that this Court has, for a long time, operated under a merciless docket, and that the Court and its staff have been working extraordinarily hard on several important and high-profile cases. Nevertheless, this Court has stated that its schedule will never get in the way of justice—and admirable promise in the face of an often-daunting docket. Here, given the stakes, the nature of the litigation to date, this Court's heavy involvement in important aspects of the litigation, and the victims and defendants who are impacted by the efficiency of these ongoing proceedings, we ask that this Court rescind the referral order and handle all remaining pretrial litigation moving forward at the district court level. Alternatively, considering the Court's workload and, given the fact that non-dispositive motions have recently been argued and decided by the magistrate judge, this Court could, as Chief Judge Wolford did in *Pirk*, partially rescind the referral order and handle dispositive motions that will undoubtedly, at some point, need a final decision from the District Court. In conjunction with rescinding the referral order, either in whole or in part, this Court should also set a trial date.

## II.   <u>The Court Should Grant the Government's Motion to Set a Trial Date.</u>

The Sixth Amendment and the Speedy Trial Act require the government to provide the defendant with a speedy trial. The Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Indeed, the Supreme Court has deemed the right to a speedy trial as "fundamental" to our system of justice. *Klopfer v. North Carolina*, 386 U.S. 213, 223-26 (1967) ("The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."). The Second Circuit has held that the public, just as much as the defendant, "is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'" *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995).

Pursuant to the Sixth Amendment, the Court and the government owe an "affirmative obligation to [a criminal defendant] and to the public to bring matters to trial promptly." *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979). This burden, however, weighs particularly heavily on the government, which "owe[s] the additional duty of monitoring the case and pressing the court for a reasonably prompt trial." *United States v. Vispi*, 545 F.2d 328, 334 (2d Cir. 1976). As such, the Second Circuit has "repeatedly emphasized that affirmative action by the government in bringing cases to trial is mandated." *United States v. Tigano*, 880 F.3d 602, 613 (2d Cir. 2018).

In the same vein, the Speedy Trial Act requires the government to bring a criminal defendant to trial within 70 days of their first appearance before a judicial officer or the filing of an indictment, whichever is later. *See* 18 U.S.C. § 3161 (c)(1). "A district court is under an obligation at all times to protect the interests embodied in the Speedy Trial Clause. The Speedy Trial Act was enacted to assist courts in that task." *United States v. Black*, 918 F.3d 243, 277 (2d Cir. 2019) (Cote, J., concurring and dissenting in part).

Neither the Sixth Amendment nor the Speedy Trial Act require "unreasonable speed," which could "have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." *United States v. Ewell*, 383 U.S. 116, 120 (1966). Rather, both recognize that "criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "Partly because of these often dueling interests, the speedy-trial right has been described as amorphous, slippery, and necessarily relative." *United States v. Tufino*, 2021 WL 1788521, at *2 (W.D.N.Y. May 5, 2021) (citing *Barker v. Wingo*, 407 U.S. 514, 522 (1972)) (internal quotation marks omitted). The right to a speedy trial, however, is never peripheral or irrelevant (even where a defendant agrees to waive his rights by, for example, consenting to exclusions of time).

Title 18, United States Code, Section 3161(a) directs that "[i]n any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, *shall*, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-

term trial calendar at a place within the judicial district, so as to assure a speedy trial." (emphasis added).

Moreover, by rescinding the referral order, the Court would also protect the rights conferred by the CVRA, which as applicable here includes legal guardians and family members of Crystal Quinn, the deceased victim. The CVRA entitles victims to, *inter alia*, proceedings "free from unreasonable delay," 18 U.S.C. § 3771(a)(7), and gives them the right to be "reasonably heard" at any sentencing proceedings. 18 U.S.C. § 3771(a)(4). Further, the CVRA commands that "[t]he court shall ensure" that victims can realize their rights under the statute, § 3771(b)(1), while also directing prosecutors to make "best efforts" to accord victims their enumerated rights. 18 U.S.C. § 3771(c)(1). Crime victims also enjoy the right to be "treated with fairness and with respect for their dignity and privacy." 18 U.S.C. § 3771(a)(8).

As this Court is aware, deadlines spur action and deadlines also keep the parties on track. Setting a trial date allows the Court to carry out its duty to protect all parties' rights pursuant to the Constitution and statutory law. Likewise, setting deadlines provides victims, witnesses, the community, the Court, and counsel for both parties, with a clear roadmap of things to be done, while also establishing a target date for the trial of this case. Given the procedural history and posture of this case, and consistent with requirements of 18 U.S.C. §3161(a), the Sixth Amendment, the Speedy Trial Act, and the CVRA, the Court should rescind the referral order, and, after consultation with defense counsel and the government, set a date certain for trial.

This case has been pending since January 5, 2024, or for 509 days as of this filing. But the case has made little progress towards trial. As set forth above, dispositive and non-dispositive motions that were originally due on January 21, 2025, seven months after the defendants received voluntary discovery, and the Magistrate Court adjourned the deadline over the government's objection until February 22, 2025. Even then, the defendants represented that the needed thirty more days to file *both non-dispositive and dispositive* motions. After that, the motions schedule was held in abeyance, over the government's objection, based upon DOJ internal guidance notwithstanding that the guidance memoranda and the caselaw interpreting DOJ internal guidance do not confer substantive rights upon a defendant. Next, the motions schedule was bifurcated over the government's objections. As it stands, dispositive motions are still not due until August 8, 2025, or 581 days after the defendants were charged via Second Superseding Indictment and at least 430 days after all defendants had voluntary discovery. Undoubtedly, some or all parties will appeal whatever Report and Recommendation the Magistrate Court authors regarding the dispositive motions. Factoring in the objection process, it is conceivable that this Court will not have ripe objections until early 2026, or even later.

As this Court is aware, it imposed a sanction against the government that it would count five months of constitutional speedy trial time against the government when it vacated the magistrate judge's bad faith finding stemming from the government missing a discovery deadline. *See* ECF No. 310 . As a result, the government has significant interest in ensuring that this case is not unduly delayed, or that the Court's sanction is not weaponized through strategic delays. *See United States v. Tigano,* 880 F.3d 602, 616 (2d Cir. 2018) ("*Barker* makes

clear that 'neutral' delays must be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."); *see also Barker v. Wingo*, 407 U.S. 514, 522 (1972) ("Delay is not an uncommon defense tactic.").  As this Court imposed the sanction, it is uniquely positioned to ensure that its sanction is not unfairly amplified by the defendants, strategically or inadvertently, or magnified by the pacing of the schedule before the Magistrate Court, including the inefficiency inherent in the bifurcated motions schedule and "going through a two-step process rather than a one-step process," which in this case, as in *Gendron*, "doesn't make a whole lot of sense."  *See* 22-CR-109-LJV, Trans. Status Conf. at 3-4, ECF No. 103.

In scheduling a trial date and paving an unambiguous path toward trial by implementing a forward looking scheduling order that accounts for the timely and orderly filing, argument, and decision of dispositive motions (some of which have already been filed before the magistrate judge and are ripe for argument and decision), this Court will assure all persons that this case will proceed in a timely and efficient manner while balancing all countervailing concerns of the defendants, victims, and the public under statutory and Constitutional law.  As a result, the government respectfully requests that the Court rescind the referral order, schedule a status conference and, after receiving input from the government and defense counsel, schedule a trial date.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should rescind the referral order, either in whole or in part, and should schedule a date for trial.


DATED:  Buffalo, New York, May 28, 2025.


MICHAEL DIGIACOMO
United States Attorney


BY:    s/NICHOLAS T. COOPER
s/CASEY L. CHALBECK
s/CAITLIN M. HIGGINS
s/JOSEPH M. TRIPI
Assistant United States Attorneys
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202