IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                                                          23-CR-99-LJV

SIMON GOGOLACK, et al.,

      Defendants.
_____

### MOTION FOR A STAY OF THE MAGISTRATE COURT'S ORDER DIRECTING THE GOVERNMENT TO DISCLOSE GRAND JURY MINUTES FOR *IN CAMERA* INSPECTION

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby submits the following motion for a stay of the Magistrate Court's order directing the government to disclose grand jury minutes for *in camera* inspection.

### I.  BACKGROUND

#### A.  The Defendants' Arguments before the Magistrate Court

In their pretrial motions, Messrs. Gerace, Ermin, and Hinkle sought disclosure of grand jury minutes so that they can advance a motion to dismiss for prosecutorial misconduct. *See* Gerace, Ermin, Hinkle Omnibus Non-Disp. Pre-Tr. Mots., at 63–81, ECF No. 410, (dated Apr. 16, 2025) (hereinafter "Gerace Mot."). The defendants advanced two sets of arguments. First, they claimed that the Second Superseding Indictment ("the Indictment") includes "demonstratively false allegations." *Id.* at 68 (capitalization and underlined omitted). Specifically, the defendants argued that one of the Indictment's alleged Overt Acts—Overt Act ¶ 25—is "clearly false and utterly absurd." *Id.* at 69.

Overt Act ¶ 25 alleges as follows:

> The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness. The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list.

Sec. Super. Indict., at 16 ¶ 25, ECF No. 25, (filed Jan. 5, 2024).

In the defendants' view, this allegation equates to an assertion that "Mr. Gerace learned through inappropriate means that Ms. Quinn was a witness." Gerace Mot., at 68. As they put it, "[t]he government wanted to advance a theory that Mr. Gerace became aware that Ms. Quinn was a potential government witness by inappropriate and secretive means . . . ." *Id.* at 69. "In reality," they explain, "the government had publicly revealed Ms. Quinn to be a cooperating witness during a detention hearing in March 2023 before witness lists were filed in case no. 19-CR-227." *Id.* at 70. In sum, the defendants' argument that any suggestion that Mr. Gerace initially "learned of Ms. Quinn's designation as a government witness" through her "inclu[sion] on the defense witness list . . . is blatantly false, and the government knows it." *Id.* at 71. On this basis, the defendants argue that the government "engineered" the "grand jury presentation . . . to present an obviously false narrative," which "certainly supports disclosure of grand jury minutes in support of a potential motion to dismiss." *Id.* at 73. At no point, either in their initial papers or their reply brief, did the defendants argue that the government improperly instructed the grand jury with respect to Overt Act ¶ 25 (or any other allegation related to Count 1).

Second, the defendants argue that the government committed prosecutorial misconduct by judge shopping through case-related forms. *See id.* 74–80. Based on the defendants' narrative of prosecutorial judge-shopping, the defendants seek the "disclosure of

2

grand jury minutes" so that "the defense can accurately review what information the government had solicited at the grand jury prior to the indictment of Mr. Gogolack when it declined to file a" case-related form, relating the case to the prosecution of Messrs. Gerace and Bongiovanni in case numbers 19-CR-227 and 23-CR-37. *Id.* at 81.  For the purposes of this motion, the government devotes less attention to this argument because counsel for Mr. Gerace did not focus on it in his oral argument before the Magistrate Court, and the Magistrate Court did not appear to consider it when ordering the government to disclose grand jury transcripts.

B. **The Government's Response in Opposition**

As it relates to the defendants' motion, the government's response proceeded in two parts.[1]  First, the government argued that "the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they disagree with the facts asserted." Gov. Omnibus Resp. in Opp., at 50, ECF No. 423, (dated Apr. 30, 2025).  Indeed, "[t]o hold otherwise would invite every defendant in every case to access grand jury materials on the basis that the defendant disagreed with the Grand Jury's findings." *Id.* at 50–51.  As such, the government maintained that the defendants failed to demonstrate a "particularized need," which the standard requires. *See id.* at 51.

Second, and insofar the defendants sought disclosure to determine whether the government engaged in judge shopping, the government responded that Rule 6(e) "authorizes disclosure where 'a ground may exist to dismiss the indictment because of a matter that occurred *before* the grand jury,' not as a baseless fishing expedition in search of prosecutorial

---

[1] Mr. Gogolack also requested grand jury minutes.  The Magistrate Court did not appear to rule on his request.  Accordingly, this appeal does not address Mr. Gogolack's arguments.

3

misconduct *outside* the grand jury." *Id.* at 55 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (second emphasis added).

      **C.**      **The Oral Argument, the Indictment, and the Magistrate Court's Ruling**

During the oral argument, the government argued that the defendants misconstrued Overt Act ¶ 25 and the Indictment, which contains allegations undermining the defendants' incorrect narrative regarding the government's grand jury presentation. Contrary to the defendants' urgings, Overt Act ¶ 25 does not allege that Mr. Gerace first learned that Ms. Quinn was a government witness by Gerace Attorney 1 putting her name on the defense witness list. In fact, it does not even allege that an attorney violated the Protective Order. Rather, Overt Act ¶ 25 alleges that placing Ms. Quinn's name on the defense's witness list "circumvented" the Protective Order's provision that prohibited counsel from revealing to Mr. Gerace "the government's witnesses' names" and "from providing [Mr. Gerace] with the government's witness list." Sec. Super. Indict., at 16 ¶ 25.[2]

Consistent with Mr. Gerace's theory that he could have learned Ms. Quinn was cooperating based on the government's detention proffer, the Indictment makes several references regarding detention proceedings in 19-CR-227 and 23-CR-37. For example, the Indictment's Introduction alleges as follows:

---

[2] During the oral argument, Mr. Gerace's counsel noted that Ms. Quinn said favorable things about Mr. Gerace, which established a logical basis for her inclusion on his witness list. The issue with that argument, as the government noted, is that Mr. Gerace's witness list already reserved the right to call any of the witnesses identified on the government's witness list, which was filed approximately one month prior to Gerace Attorney 1's filing of the defense witness list. In other words, it was wholly unnecessary for Mr. Gerace's witness list to identify Ms. Quinn by name, because it had already reserved the right to call her due to her inclusion on the government's witness list. Considering that the protective order did not prohibit Mr. Gerace from discussing with others the identities of people appearing on *his* witness list, the grand jury was permitted to make inferences regarding the purpose of Ms. Quinn being named as a defense witness.

4

> 16. On March 24, 2023, **GERACE** appeared before a United States District Judge for an arraignment on Indictment 23-CR-37. Following detention hearing proceedings on March 24 and March 27, 2023, **GERACE** was ordered detained pending trial.

Sec. Super. Indict., at 5 ¶ 16.

    This means that the Grand Jury was presented with evidence regarding the detention proceedings held on March 24 and March 27, 2023. Elsewhere, the Indictment contains allegations that are consistent with Mr. Gerace's theory that he did not learn of Ms. Quinn's cooperation with the government through Gerace Attorney 1's placement of her on the witness list. For example, the very first overt act alleged in Count 1—Overt Act ¶ 17—states:

### Overt Acts

17. On or about February 16, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1 caused an unwitting attorney, Attorney 2, to: (i) communicate with Crystal Quinn without the consent of Crystal Quinn's attorney; (ii) offer to represent Crystal Quinn in the matter in which Crystal Quinn already had an attorney; and (iii) offer to represent Crystal Quinn because Gerace Attorney 1, was "concerned that the feds might be trying to intimidate [Crystal Quinn] or even just bring [Crystal Quinn] in for questioning." Gerace Attorney 1 caused Attorney 2 to make a communication to Crystal Quinn as follows:

> Omg I'm sorry to hear that hunny 😔
> Where are you living now? Are you ok otherwise?
> I know ▓▓▓ well, great guy and great attorney. I'm guessing he's meeting you for the same concern I had as I got a call from Peter Gerace's attorney, ▓▓▓ ▓▓▓ concerned that the feds might be trying to intimidate you or even just bring you in for questioning. He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation.
> And I want you to know I'm here even if you just need a friend as well 😊

Sec. Super. Indict., at 14 ¶ 17. In other words, the evidence supports the inference that by February 16, 2023, Gerace Attorney 1 either (1) suspected or believed Ms. Quinn could—but had not yet—began cooperating with the federal government or (2) suspected or believed Ms. Quinn already began cooperating with the government.

The very next allegation—Overt Act ¶18—supports the inference that by early March 2023, Gerace knew that Ms. Quinn was cooperating with the federal government. Specifically, Overt Act ¶18 alleges:

> 18. On or about March 13, 2023, individuals unknown to the Grand Jury placed dead rats on Crystal Quinn's mother's vehicle and in the vicinity of Crystal Quinn's residence in Depew, New York.

*Id.* at 15 ¶ 18.

Stated otherwise, to make this finding, the Grand Jury must have received evidence supporting the inference that Mr. Gerace or someone associated with Mr. Gerace believed that Ms. Quinn was cooperating with the government even prior to the detention hearing held on March 27th. After all, why else would dead rats be placed on her mother's vehicle in the vicinity of her residence on or about March 13, 2023, *before* the date of Mr. Gerace's detention hearing?

As the government stated at oral argument, the Indictment's other allegations also make plain that the defendants' assertions of government misconduct are meritless. It is obvious based upon a plain reading of the Indictment that evidence relevant as to when Mr. Gerace inferred or concluded that Ms. Quinn was cooperating was presented to the Grand Jury, and does not support the defendants' core claim that the facts set forth in Overt Act ¶25 are *how* Mr. Gerace learned of Ms. Quinn's cooperation. To the contrary, the Indictment demonstrates that the grand jury heard evidence that Mr. Gerace focused on the potential that Ms. Quinn was a government witness as early as February 16, 2023, and that Ms. Quinn may have inadvertently been confirmed as a government witness through the March 27th detention hearing.

Nevertheless, the Magistrate Court focused on another issue altogether, one neither briefed by the parties nor raised by the defendants. Specifically, in making his ruling, the Magistrate Court ordered disclosure on the basis of "how" the grand jury "was . . . instructed so that they could make th[e] finding" alleged in Overt Act ¶ 25. Non-Disp. Mots. Oral Arg. Tran., at 103, (dated May 21, 2025).

Additionally, the Magistrate Court concluded that because Rule 6(e)(3)(E) grants it discretion to release grand jury minutes, it could do so without regard to the "particularized need" standard required by the Second Circuit. In particular, the Magistrate Court stated:

> Criminal Rule 6(e)(3)(E) states that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury. *I emphasize the word* "may" *here*. I'm not drawing any conclusions as to whether there was any impropriety. I don't know. But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to -- I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding. So I am going to direct that the Grand Jury minutes be given to me for my *in-camera* review.
>
> Mr. Foti, I know you've asked that you have access to it, too. Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate. I may conclude that I don't think there was any impropriety. I would indicate that to Judge Vilardo, if I conclude that there may have been. We'll see where we go from there. But for now that's my ruling.

*Id.* at 102–03.

## II.   LEGAL FRAMEWORK

### A.   Stays of a Magistrate Court's Order

8

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, *absent a stay*, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975) (emphasis added). In the appellate context, four factors are relevant in considering whether to issue a stay of an order pending appeal: "(1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Grote*, 961 F.3d 105, 122–23 (2d Cir. 2020) (*citing In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks and footnote omitted)).

But it is unclear if those four factors apply where, as here, a party to a criminal case seeks a stay from the district court of the magistrate court's decision.[3] In this district, motions for stays in criminal cases are routinely made, considered, and granted without the moving party addressing the traditional four appellate factors—including often by the Magistrate Court to whom this case has been referred. *See, e.g.*, Aff. in Support of Mot. for Stay, *United States v. Thomas*, 21-MJ-564, ECF No. 8, (dated May 4, 2021) (affirmation by defense counsel seeking a stay but not addressing the four factors); Aff. in Support of Mot. for Extension & Stay, *United States v. Nagi*, 15-CR-148, ECF No. 39, (dated June 28, 2016) (affirmation by government seeking an extension and a stay without addressing the four factors); Mem. in Support of Mot. for Stay, *United States v. Kelley*, 10-CR-266, ECF No. 19, (dated Sept. 30,

---

[3] Previously, the Magistrate Court criticized the government for not addressing the four appellate factors governing stay requests. *See* Order, ECF No. 256, (dated Oct. 9, 2024).

9

2010) (successfully moving for a stay without addressing the four factors); Mot. for Stay, *United States v. White*, 22-MR-154, ECF No. 19, (dated May 23, 2023) (affirmation by defense counsel seeking a stay without addressing the four factors); *see also* Minute Entry, *United States v. MacCallum*, 15-CR-204, (dated Apr. 28, 2016) (stay of release order granted by Magistrate Judge McCarthy without reference to or requiring adherence to the four stay factors).

Consistent with this practice, other district courts within the Second Circuit have reviewed motions for stays under more flexible criteria than the four appellate factors the Magistrate Court has embraced in this litigation. *See, e.g.*, *Shaw v. Hornblower Cruises & Events, LCC*, No. 21 CIV. 10408 (VM), 2023 WL 2330368, at *4 (S.D.N.Y. Mar. 2, 2023) (in a case regarding a stay of a discovery order, noting, in relevant part, that a stay "may be entered upon a moving party's showing of 'good cause'" (quoting *In re Application of Sukhbaatar Batbold for an Order Pursuant to 28 U.S.C. § 1782*, No. 21 MC 218, 2023 WL 2088524, at *9 (S.D.N.Y. Feb. 17, 2023))); *United States v. $278,780.80 in Funds*, No. 11 CIV. 00555 KBF, 2012 WL 4747209, at *2 (S.D.N.Y. Oct. 4, 2012) (referencing a "necessary or appropriate" standard in connection with the government's motion for a stay of a magistrate court's order); *Sheehy v. Wehlage*, 1:02-CV-592A, 2007 WL 836811, at *1, (W.D.N.Y. Mar. 15, 2007) (granting stay of Magistrate Court's sanctions order without reference to the four traditional appellate factors).

This practice makes sense. Unlike the Federal Rule of Appellate Procedure 8 or Federal Rule of Civil Procedure 62, both of which outline how, and under what circumstances, a party may seek a stay pending appeal, the Federal Rules of Criminal Procedure lack a general vehicle through which parties may seek or obtain stays. *Cf.* FED. R. CRIM. P. 38 (regarding stays of sentencings or other disabilities). Given the dearth of direction

offered by the Federal Rules, it appears that district courts apply a common-sense, flexible approach to granting stays within their own jurisdictions. That said, all parties agree that it is the burden of the party seeking the stay to show that circumstances—whatever they may be—justify the exercise of the court's discretion in this regard. *Nken v. Holder*, 556 U.S. 418, 421 (2009).

**B.    Grand Jury Secrecy**

"It is axiomatic that 'grand jury proceedings are accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" United States v. Basciano, 763 F. Supp. 2d 303, 315 (E.D.N.Y. 2011) (quoting United States v. Tranquillo, 606 F. Supp. 2d 370, 381 (S.D.N.Y. 2009)). Maintaining the secrecy of grand jury proceedings is a tradition in the United States that predates the birth of the nation itself. *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (citing *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973)). Federal Rule of Criminal Procedure 6(e) codifies the rule of secrecy, which has multiple purposes, including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 102 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958)).

The Supreme Court has held that secrecy also "encourage[s] all witnesses to step forward and testify freely without fear or retaliation" because "[t]he grand jury as a public

11

institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Procter & Gamble Co.*, 356 U.S. at 682.

Despite the strong presumption in favor of such secrecy, a court may authorize disclosure of a grand-jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). But first, the defendant must satisfy a heavy burden of showing that "compelling necessity" outweighs countervailing public policy in order to disturb the presumption of the "indispensable secrecy of grand jury proceedings." *Procter & Gamble Co.*, 356 U.S. at 682.

It is well settled that "[h]ope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e)." *United States v. Smith*, 105 F. Supp. 3d 255, 261 (W.D.N.Y. 2015) (Wolford, J.); *see also United States v. Cobb*, 544 F. Supp. 3d 310, 332 (W.D.N.Y. 2021) (same). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010).

"This standard applies equally to a defendant's request for the court to conduct *in camera* inspection of grand jury transcripts." *Smith*, 105 F. Supp. 2d at 261; *United States v. Forde*, 740 F. Supp. 2d 406, 413–14 (S.D.N.Y. 2010) (applying particularized need standard to the defendant's request for an *in camera* inspection of the grand jury minutes); *United States v. Crisona*, 271 F. Supp. 150, 158–59 (S.D.N.Y. 1967) (mere speculation regarding potential irregularities did not require a trial judge to inspect grand jury minutes).

Consequently, in this Circuit, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Torres*, 901 F.2d at 233 (citations and internal quotations omitted); *see also United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct."); *United States v. Basciano*, 763 F. Supp. 2d 303, 315 (E.D.N.Y. 2011) ("It is axiomatic that 'grand jury proceedings are accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'") (quoting *United States v. Tranquillo*, 606 F. Supp. 2d 370, 381 (S.D.N.Y. 2009)). Moreover, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Torres*, 901 F.2d at 233.

### III.   ARGUMENT

Under either the flexible, "good cause" standard, *see Shaw*, 2023 WL 2330368, at *4, or the more stringent four-factor test, the Court should enter a stay of the Magistrate Court's order requiring the government to disclose grand jury materials to the Magistrate Court for an *in camera* review. Regarding the first factor, the government has a strong chance of prevailing on its appeal because the Magistrate Court abused its discretion to order the disclosure of Grand Jury minutes in three respects.

First, not only did the Magistrate Court fail to make findings that the defendants' false narrative regarding the Indictment amounted to a "particularized need," the Magistrate Court failed to apply the "particularized need" standard at all. Although the Magistrate Court has discretion under Rule 6(e), it is this standard that defines the contours of his discretion. *See generally* Oral Arg. Tran., at 102–03. On this point, *Smith* is instructive. In that case, the same

Magistrate Court ordered the disclosure of grand jury instructions because, in its view, the government "ignore[d] [Defendant's] argument that the particularized need standard [did] not apply to her narrow request for the grand jury instructions." 105 F. Supp. 3d at 257 (quoting Rep't & Rec., at 9–10, ECF No. 428, (dated July 21, 2014)). The district court disagreed, concluding that the defendant failed to demonstrate a particularized need. *See id.* That makes sense for two reasons: (1) the government's disregard for an argument does not equate to a defendant's satisfaction of a standard; and (2) the particularized need standard, indeed, applies to requests for grand jury instructions. *See id.* In response to the government's motion for reconsideration in that case, the defendant argued that the particularized need standard did not apply to instructions given to the grand jury. *See id.* at 259. Disagreeing, Chief Judge Wolford explained that "courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need." *Id.* (collecting cases).

The Magistrate Court's decision here is even more deficient than that it provided in *Smith*. Whereas in *Smith* the government gave short shrift to an argument the defendant advanced, here neither party advanced or responded to the issue and the Magistrate Court, again, ignored Chief Judge Wolford's holding in *Smith*. *See* Oral Arg. Tran., at 103; *see generally id.* (indicating the complete absence of any argument related to grand jury instructions). Because the Magistrate Court based his holding on an issue the defendants never raised, it is axiomatic that the defendants could not have made (and did not make), "with particularity," a "showing of need for the transcripts" with respect to the jury instructions. *Douglas Oil Co.*, 441 U.S. at 221 (internal quotations omitted).

14

Second, in unnecessarily broadening the defendants' arguments—and ordering the disclosure on a basis the defendants never raised—the Magistrate Court contravened foundational commitments of our adversarial system and abused its discretion. In our system of adjudication, the parties "frame the issues for decision" and courts serve as "neutral arbiters of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (Ginsburg, J.) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). By cutting from whole cloth the "winning argument" used to erode the Grand Jury's secrecy, the Magistrate Court engaged in the very kind of transformative departure from the party presentation principle that the Supreme Court unanimously concluded merited reversal in *Sineneng-Smith* after the Ninth Circuit appointed three *amici* to brief and argue issues framed by the panel overseeing an appeal. *See* 590 U.S. at 374–75, 380. In fact, the circumstances here are far worse: here, the government did not even have an opportunity to explain in writing or at oral argument why the Magistrate Court was incorrect to order disclosure on the basis that it did not understand what the government instructed the Grand Jury because the Magistrate Court never identified any concern regarding the Grand Jury's instructions until the moment it announced its order. *See* Oral Arg. Tr., at 103. As such, the Magistrate Court abused its discretion when it invented the basis to disclose Grand Jury minutes. *See Cook v. United States*, 111 F.4th 237, 241 (2d Cir. 2024) (Sullivan, J., concurring in the order denying re'hrg *en banc*) ("Given that the appellants themselves did not conceive of their *Davis* challenges as assertions of Rule 11 error, the panel cannot be faulted for failing to reimagine the appellants' argument for them. Indeed, the panel would likely have *abused its discretion* had it done so.").

Third, the Magistrate Court's decision is likely clearly erroneous, as it misapprehends, in two ways, how the Grand Jury operates. For starters, contrary to the Magistrate Court's

ruling, the government does not—and did not—"instruct[]" the Grand Jury to "make" particular factual findings. Oral Arg. Tran., at 103. The Grand Jury makes factual findings. *See United States v. DiNapoli*, 8 F.3d 909, 915 (2d Cir. 1993) (recognizing that the grand jury is a fact-finder). In that vein, the Grand Jury could have said that it did not agree that Overt Act ¶ 25 constituted an overt act in the conspiracy charged in Count 1. It did not.

The Magistrate Court's order misapprehends the nature of grand jury proceedings in other ways, too. For example, to the extent the Magistrate Court's ruling can be construed as alluding to legal instructions, it assumes that the government provided the Grand Jury with legal instructions. But often, the government does not provide the grand jury with legal instructions regarding the charges. *See United States v. Hoey*, No. S3 11-CR-337 PKC, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) ("The government need not provide the grand jury with legal instructions." (citing *United States v. Lopez–Lopez*, 282 F.3d 1, 9 (1st Cir. 2002))).

The interplay between the Magistrate Court's *sui generis* rationalizations and assumptions about how the Grand Jury process works generally, and worked here, adds confusion where there should be clarity. As it stands, neither the government, the defendants, nor this Court can say whether the Magistrate Court decided it could inspect, *in camera*, grand jury materials because the defendants carried their burden of demonstrating a particularized need (they could not have with respect to the instructions, which they never sought), because the Magistrate Court did not understand a particular Grand Jury finding (which is irrelevant because the Magistrate Court is not the finder of fact), or because the Magistrate Court is simply curious about what evidence the Grand Jury reviewed (which is different than its purported basis for ordering the disclosure of the Grand Jury's minutes). What is clear, however, is that the Magistrate Court declined to apply the particularized need standard

because it mistakenly—and emphatically—believed that Rule 6(e)(3)(E) granted it with the unbridled discretion to review and release the Grand Jury's materials. Accordingly, the first factor—the government's likelihood of success on appeal—weighs in favor of a stay.

Second, there will be irreparable injury if a stay is denied. The Grand Jury's integrity relies on its continued secrecy, and it is the position of the U.S. Attorney's Office that it cannot be the practice in this district that a Magistrate Court is permitted to obtain, inspect, and opine on grand jury matters and apply his own theories of prosecutorial misconduct without rigorously adhering to the stringent legal standards applicable to grand jury matters.

Third, the balance of hardships and the public interest weigh in favor of this Court granting a stay. Disclosing grand jury materials, even to the Magistrate Court for an *in camera* inspection, is a significant breach of the presumption of regularity. *United States v. R. Enters., Inc.*, 498 U.S. 292, 300–01 (1991) ("We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority."); *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."); *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) ("As a general rule, the grand jury process is afforded a presumption of regularity." (internal quotations omitted)). To do so under these circumstances, where the Indictment's own allegations regarding detention proceedings held on March 24 and March 27, 2023, undermine the defendants' incorrect narrative of the government's grand jury presentation, and where the nature and practice of grand jury proceedings refutes the Magistrate Court's incorrect assumption that the

government tells the grand jury what facts to find, is unprecedented. Accordingly, at this stage of the proceeding, the interests of justice weigh in favor of granting a stay.

Finally, to the extent that there is concern that the delay resulting from the stay and the appeal would prejudice the defendants' ability to file a dispositive motion based on the grand jury minutes, it is entirely speculative. Pursuant to the Magistrate Court's own conclusion, its own *in camera* inspection may not result in *any* disclosure to the defendants. Moreover, the government is willing to submit a sealed submission *ex parte*, to preserve the grand jury's secrecy, refuting the defendants' actual argument that the government deprived the Grand Jury of evidence showing that Mr. Gerace could have (and likely did) learn of Ms. Quinn's status as a witness in March 2023 at the time of his detention hearing. *Cf. United States v. Basciano*, 763 F. Supp. 2d 303, 316 (E.D.N.Y. 2011) (Garaufis, J.), *aff'd*, 634 F. App'x 832 (2d Cir. 2015) (unpublished) (in relevant part, deny request for disclosure of grand jury minutes where the government stated that the factual premise of the defendant's argument was incorrect); *see also In re John Doe Corp.*, 675 F.2d 482, 490 (2d Cir. 1982) (*in camera*, *ex parte* submission is appropriate where it is the only way to resolve an issue without compromising the need to preserve the secrecy of the grand jury). As such, the resolution of the issues on appeal should occur promptly.

### IV. CONCLUSION

WHEREFORE, the government respectfully requests that the Court grant its motion for a stay of the Magistrate Court's May 21, 2025, Order requiring the disclosure of grand jury minutes for an *in camera* inspection. Because the Court has already scheduled a status conference in this matter for next week, the government respectfully proposes that the parties discuss a briefing schedule as to the government's appeal at that time.

DATED: Buffalo, New York, May 29, 2025.

                                MICHAEL DIGIACOMO
                                United States Attorney

BY:   s/ CASEY L. CHALBECK
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5881
       Casey.Chalbeck@usdoj.gov