IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                                    23-CR-99-LJV

SIMON GOGOLACK, et al.,

               Defendants.

---

## GOVERNMENT'S APPEAL OF THE MAGISTRATE COURT'S ORDER DIRECTING THE *IN CAMERA* INSPECTION OF GRAND JURY TRANSCRIPTS

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Nicholas T. Cooper, Casey L. Chalbeck, Caitlin M. Higgins, and Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby appeals the Magistrate Court's order that it disclose grand jury transcripts for an *in camera* inspection.

## I.    BACKGROUND

### A.    The Defendants' Arguments before the Magistrate Court

In their pretrial motions, Messrs. Gerace, Ermin, and Hinkle sought disclosure of grand jury minutes so that they can advance a motion to dismiss for prosecutorial misconduct. *See* Gerace, Ermin, Hinkle Omnibus Non-Disp. Pre-Tr. Mots., at 63–81, ECF No. 410, (dated Apr. 16, 2025) (hereinafter "Gerace Mot."). The defendants advanced two sets of arguments. First, they claimed that the Second Superseding Indictment ("the Indictment") includes "demonstratively false allegations." *Id.* at 68 (capitalization and underlined omitted). Specifically, the defendants argued that one of the Indictment's alleged Overt Acts—Overt Act ¶ 25—is "clearly false and utterly absurd." *Id.* at 69.

Overt Act ¶ 25 alleges as follows:

> The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness.   The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list.

Sec. Super. Indict., at 16 ¶ 25, ECF No. 25, (filed Jan. 5, 2024).

In the defendants' view, this allegation equates to an assertion that "Mr. Gerace learned through inappropriate means that Ms. Quinn was a witness."   Gerace Mot., at 68.  As they put it, "[t]he government wanted to advance a theory that Mr. Gerace became aware that Ms. Quinn was a potential government witness by inappropriate and secretive means . . . ."   *Id.* at 69.   "In reality," they explain, "the government had publicly revealed Ms. Quinn to be a cooperating witness during a detention hearing in March 2023 before witness lists were filed in case no. 19-CR-227."   *Id.* at 70.   In sum, the defendants' argument that any suggestion that Mr. Gerace initially "learned of Ms. Quinn's designation as a government witness" through her "inclu[sion] on the defense witness list . . . is blatantly false, and the government knows it."   *Id.* at 71.   On this basis, the defendants argue that the government "engineered" the "grand jury presentation . . . to present an obviously false narrative," which "certainly supports disclosure of grand jury minutes in support of a potential motion to dismiss."   *Id.* at 73.   At no point, either in their initial papers or their reply brief, did the defendants argue that the government improperly instructed the grand jury with respect to Overt Act ¶ 25 (or any other allegation related to Count 1).

Second, the defendants argue that the government committed prosecutorial misconduct by judge shopping through case-related forms.   *See id.* 74–80.   Based on the defendants' narrative of prosecutorial judge-shopping, the defendants seek the "disclosure of

2

grand jury minutes" so that "the defense can accurately review what information the government had solicited at the grand jury prior to the indictment of Mr. Gogolack when it declined to file a" case-related form, relating the case to the prosecution of Messrs. Gerace and Joseph Bongiovanni in case numbers 19-CR-227 and 23-CR-37. *Id.* at 81. For the purposes of this motion, the government devotes less attention to this argument because counsel for Mr. Gerace did not focus on it in his oral argument before the Magistrate Court, and the Magistrate Court did not appear to consider it when ordering the government to disclose certain grand jury transcripts.

**B.    The Government's Response in Opposition**

As it relates to the defendants' motion, the government's response proceeded in two parts.[1] First, the government argued that "the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they disagree with the facts asserted." Gov. Omnibus Resp. in Opp., at 50, ECF No. 423, (dated Apr. 30, 2025). Indeed, "[t]o hold otherwise would invite every defendant in every case to access grand jury materials on the basis that the defendant disagreed with the Grand Jury's findings." *Id.* at 50–51. As such, the government maintained that the defendants failed to demonstrate a "particularized need," which the standard requires. *See id.* at 51.

Second, and insofar the defendants sought disclosure to determine whether the government engaged in judge shopping, the government responded that Rule 6(e) "authorizes disclosure where 'a ground may exist to dismiss the indictment because of a matter that occurred *before* the grand jury,' not as a baseless fishing expedition in search of prosecutorial

---

[1]    Mr. Gogolack also requested grand jury minutes. The Magistrate Court did not appear to rule on his request. Accordingly, this appeal does not address Mr. Gogolack's arguments.

misconduct *outside* the grand jury." *Id.* at 55 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (second emphasis added).

### C.    The Oral Argument, the Indictment, and the Magistrate Court's Ruling

During the oral argument, the government further maintained that the defendants misconstrued Overt Act ¶ 25 and the Indictment, which contains allegations undermining the defendants' incorrect narrative regarding the government's grand jury presentation. Contrary to the defendants' urgings, Overt Act ¶ 25 does not allege that Mr. Gerace first learned that Ms. Quinn was a government witness by Gerace Attorney 1 putting her name on the defense witness list. In fact, it does not even allege that an attorney violated the Protective Order. Rather, Overt Act ¶ 25 alleges that placing Ms. Quinn's name on the defense's witness list "circumvented" the Protective Order's provision that prohibited counsel from revealing to Mr. Gerace "the government's witnesses' names" and "from providing [Mr. Gerace] with the government's witness list." Sec. Super. Indict., at 16 ¶ 25.[2]

A facial and holistic reading of the Indictment illustrates that the grand jury was presented with information that the defendants speculatively claim was withheld. For example, consistent with Mr. Gerace's theory that he could have learned Ms. Quinn was cooperating based on the government's detention proffer, the Indictment specifically

---

[2]    During the oral argument, Mr. Gerace's counsel noted that Ms. Quinn said favorable things about Mr. Gerace, which established a logical basis for her inclusion on his witness list. The issue with that argument, as the government noted, is that Mr. Gerace's witness list already reserved the right to call any of the witnesses identified on the government's witness list, which was filed approximately one month prior to Gerace Attorney 1's filing of the defense witness list. Accordingly, it was unnecessary for Mr. Gerace's witness list to identify Ms. Quinn by name, because it had already reserved the right to call her due to her inclusion on the government's witness list. Considering that the protective order did not prohibit Mr. Gerace from discussing with others the identities of people appearing on *his* witness list, the grand jury was permitted to make inferences regarding the *purpose* of Ms. Quinn being named as a defense witness or the *effect* of her placement—both of which are different than the defendants' narrative that the government misled the grand jury into believing that Mr. Gerace learned of Ms. Quinn's status as a witness *through* his witness list.

regarding detention proceedings in 19-CR-227 and 23-CR-37.    For example, the Indictment's
Introduction alleges as follows:

> 16.    On March 24, 2023, **GERACE** appeared before a United States District Judge
> for an arraignment on Indictment 23-CR-37.  Following detention hearing proceedings on
> March 24 and March 27, 2023, **GERACE** was ordered detained pending trial.

Sec. Super. Indict., at 5 ¶ 16.

This means that the Grand Jury was presented with evidence regarding the detention
proceedings held on March 24 and March 27, 2023.    Elsewhere, the Indictment contains
allegations that are consistent with Mr. Gerace's theory that he did not learn of Ms. Quinn's
cooperation with the government through Gerace Attorney 1's placement of her on the
witness list.    For example, the very first overt act alleged in Count 1—Overt Act ¶ 17—states:

<u>Overt Acts</u>

17.    On or about February 16, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1 caused an unwitting attorney, Attorney 2, to: (i) communicate with Crystal Quinn without the consent of Crystal Quinn's attorney; (ii) offer to represent Crystal Quinn in the matter in which Crystal Quinn already had an attorney; and (iii) offer to represent Crystal Quinn because Gerace Attorney 1, was "concerned that the feds might be trying to intimidate [Crystal Quinn] or even just bring [Crystal Quinn] in for questioning." Gerace Attorney 1 caused Attorney 2 to make a communication to Crystal Quinn as follows:

> Omg I'm sorry to hear that hunny 😢
> Where are you living now? Are you ok otherwise?
> I know ████ well, great guy and great attorney. I'm guessing he's meeting you for the same concern I had as I got a call from Peter Gerace's attorney, ████████ concerned that the feds might be trying to intimidate you or even just bring you in for questioning. He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation.
> And I want you to know I'm here even if you just need a friend as well 😊

Sec. Super. Indict., at 14 ¶ 17.

In other words, consistent with the presumption of regularity afforded to the government, the Indictment shows that the grand jury heard evidence that by February 16, 2023, Gerace Attorney 1 either (1) suspected or believed Ms. Quinn could—but had not yet—began cooperating with the federal government or (2) suspected or believed Ms. Quinn already began cooperating with the government.

The very next allegation—Overt Act ¶18—demonstrates that the grand jury made a factual finding that supports the inference that by early March 2023, Mr. Gerace and/or other co-conspirators knew that Ms. Quinn was cooperating with the federal government. Specifically, Overt Act ¶18 alleges:

> 18.    On or about March 13, 2023, individuals unknown to the Grand Jury placed dead rats on Crystal Quinn's mother's vehicle and in the vicinity of Crystal Quinn's residence in Depew, New York.

*Id.* at 15 ¶ 18.

That is, to make these finding, the Grand Jury must have received evidence supporting the inference that Mr. Gerace or another co-conspirator believed that Ms. Quinn was cooperating with the government even *prior* to the detention hearing held on March 27th. After all, why else would dead rats be placed on her mother's vehicle in the vicinity of her residence on or about March 13, 2023, *before* the date of Mr. Gerace's detention hearing?

It is obvious based upon a plain reading of the Indictment that evidence relevant as to when Mr. Gerace inferred or concluded that Ms. Quinn was cooperating was presented to the Grand Jury.   In like manner, the Indictment does not support the defendants' core claim that the facts set forth in Overt Act ¶25 are *how* Mr. Gerace learned of Ms. Quinn's cooperation. To the contrary, the Indictment demonstrates that the grand jury heard evidence that Mr. Gerace focused on the potential that Ms. Quinn was a government witness as early as February 16, 2023, and that Ms. Quinn may have inadvertently been confirmed as a government witness through the March 27th detention hearing.

Nevertheless, the Magistrate Court focused on another issue altogether, one neither briefed by the parties nor raised by the defendants.   Specifically, in making his ruling, the

Magistrate Court ordered disclosure on the basis of "how" the grand jury "was . . . instructed so that they could make th[e] finding" alleged in Overt Act ¶ 25.    Non-Disp. Mots. Oral Arg. Tran., at 103, (dated May 21, 2025).    The Magistrate Court's order is reproduced in its entirety below:

> Criminal Rule 6(e)(3)(E) states that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury.    *I emphasize the word* "may" *here*. I'm not drawing any conclusions as to whether there was any impropriety. I don't know. But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to – I'm not addressing this in terms of whether there's evidence to support it, *I'm addressing it in terms of how was the jury instructed so that they could make this finding*.    So I am going to direct that the Grand Jury minutes be given to me for my *in-camera* review.

> Mr. Foti, I know you've asked that you have access to it, too.    Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate.    I may conclude that I don't think there was any impropriety.    I would indicate that to Judge Vilardo, if I conclude that there may have been.    We'll see where we go from there.    But for now that's my ruling.

*Id.* at 102–03 (emphases added).

Implicit in the Magistrate Court's decision is the suggestion that because Rule 6(e)(3)(E) grants courts discretion to review and release grand jury minutes, the Magistrate Court could do so without regard to the "particularized need" standard required by the Supreme Court and Second Circuit.    Indeed, the Magistrate Court's decision is silent as to the particularized need standard.    *See id.*

**D.    The Government's Motion for a Stay**

On May 29, 2025, the government filed a motion to stay the Magistrate Court's order directing it to disclose grand jury transcripts.    *See* Mot. for Stay, ECF No. 436, (dated May

29, 2025).   The Court entered a temporary stay until June 9, 2025, the date of a previously scheduled status conference.   *See* Text Order, ECF No. 440, (dated June 2, 2025).   The defendants collectively responded in opposition to the government's motion on June 3, 2025. *See* Resp. in Opp. to Gov. Mot. for Stay, ECF No. 441, (dated June 3, 2025).   In their response, the defendants ask that the Court direct the government to file its appeal of the Magistrate Court's decision "no later than June 9, 2025."   *Id.* at 11.   Pursuant to Federal Rule of Criminal Procedure 59(a), parties ordinarily "serve and file objections to the [non-dispositive magistrate court order[ within 14 days . . . after the oral order is stated on the record."   FED. R. CRIM. P. 59(a).   Because the Magistrate Court's disclosure order was entered on May 28, 2025, this timely appeal follows.

## II.    LEGAL FRAMEWORKS

### A.    Standard of Review

Where a magistrate judge has the authority under 28 U.S.C. § 636(b)(1)(A) to hear and determine a pretrial matter, this Court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."   *See also* FED. R. CRIM. P. 59(a) ("The district court must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous. Failure to object in accordance with this rule waives a party's right to review.").   Here, the Magistrate Court's decision is reviewed for an abuse of discretion.   *See Douglas Oil Co. v. Petrol Stops NW*, 411 U.S. 211, 223 (1979).

### B.    Disclosure of Grand Jury Minutes

"It is axiomatic that 'grand jury proceedings are accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand

jury process.'" *United States v. Basciano*, 763 F. Supp. 2d 303, 315 (E.D.N.Y. 2011)   (quoting

*United States v. Tranquillo*, 606 F. Supp. 2d 370, 381 (S.D.N.Y. 2009)).   "[T]o overcome the

presumption of regularity that attaches to a grand jury proceeding, the defendant, who bears

the burden of persuasion, must present particularized proof of an" impropriety.   *United States*

*v. Calk*, 87 F. 4th 164, 186 (2d Cir. 2023) (internal quotations omitted)).   The Supreme Court

has formulated a three-factor test to this effect.   Specifically:

> [p]arties seeking grand jury transcripts under Rule 6(e) must show (1)
> that the material they seek is needed to avoid a possible injustice in
> another judicial proceeding, (2) that the need for disclosure is greater
> than the need for continued secrecy, and (3) that their request is
> structured to cover only material so needed.

*Douglas Oil Co.*, 411 U.S. at 222 (enumeration added).

Regarding the second factor, maintaining the secrecy of grand jury proceedings is a

tradition in the United States that predates the birth of the nation itself.   *In re Petition of Craig*,

131 F.3d 99, 101 (2d Cir. 1997) (citing *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973)).   Federal

Rule of Criminal Procedure 6(e) codifies the rule of secrecy, which has multiple purposes,

including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated;
> (2) to insure the utmost freedom to the grand jury in its deliberations, and
> to prevent persons subject to indictment or their friends from importuning
> the grand jurors; (3) to prevent subornation of perjury or tampering with the
> witnesses who may testify before [the] grand jury and later appear at the
> trial of those indicted by it; (4) to encourage free and untrammeled
> disclosures by persons who have information with respect to the
> commission of crimes; [and] (5) to protect [the] innocent accused who is
> exonerated from disclosure of the fact that he has been under investigation,
> and from the expense of standing trial where there was no probability of
> guilt.

*Id.* at 102 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958)).

It is well settled that "[h]ope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e)." *United States v. Smith*, 105 F. Supp. 3d 255, 261 (W.D.N.Y. 2015) (Wolford, J.); *see also United States v. Cobb*, 544 F. Supp. 3d 310, 332 (W.D.N.Y. 2021) (same).   "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010); *see also United States v. Dunn*, No. 05 Cr. 127, 2005 WL 1705303, at *3 (S.D.N.Y. July 19, 2005) ("[G]eneral and unsubstantiated assertions are insufficient to meet the stringent standard that a party must show a particularized need for such materials." (quotation and modification omitted)); *United States v. Ferrara*, 990 F. Supp. 146, 153 (E.D.N.Y.1998) ("The strong presumption of regularity in grand jury proceedings cannot be outweighed by purely conclusory or speculative allegations of misconduct."). "This standard applies equally to a defendant's request for the court to conduct *in camera* inspection of grand jury transcripts." *Smith*, 105 F. Supp. 2d at 261.

## C.    The Party Presentation Principle

"In our adversarial system of adjudication, we follow the principle of party presentation," and courts are assigned "the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *In re TransCare Corp.*, 81 F. 4th 37, 58 (2d Cir. 2023) (same).   Accordingly, courts "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Sineneng-Smith*, 590 U.S. at 375 (cleaned up).   And while the rule is not "ironclad", *id.* at 376, the Supreme Court has characterized the "appropriate" "initiating role" for a court to take as "modest", such as

where a court corrects a party's evident miscalculation of the elapsed time under a statute of limitations. *Id.*

## III.    ANALYSIS

With these principles in mind, the Magistrate Court abused its discretion in four respects.   First, the Magistrate Court failed to apply the particularized need standard in ordering the *in camera* disclosure of grand jury minutes.   To the extent the Magistrate Court did apply the particularized need standard, its application was contrary to law.   Second, the Magistrate Court strayed far from the party presentation principle when it premised its disclosure order on a basis the defendants never advanced—*viz.*, the issue of how the government instructed the grand jury with respect to Overt Act ¶ 25.   Third, and finally, though any of these errors is sufficient to conclude that the Magistrate Court abused its discretion, the cumulative impact of these errors should leave this Court with the unmistakable impression that reversible error occurred.   Accordingly, the government respectfully asks this Court to reverse the Magistrate Court's decision.

### A.    The Magistrate Court Failed to Apply the Particularized Need Standard and to the Extent it Did, its Application is Contrary to Law.

First, the Magistrate Court abused its discretion in failing to apply the "particularized need" standard.   Although the Magistrate Court has discretion under Rule 6(e), the particularized need standard strictly defines the contours of his discretion.   *See Douglas Oil Co.*, 441 U.S. at 217 (stating that "a *party* seeking access to grand jury transcripts must show a "particularized need" (emphases added)).   Here, the record is devoid of any evidence that the Magistrate Court considered, let alone applied, the governing standard.   *See generally* Oral Arg. Tran., at 102–03.   Indeed, it appears that the Magistrate Court thought that its discretion was limitless under Rule 6(e). *See* Oral Arg. Tran., at 102–03 ("Criminal Rule 6(e)(3)(E) states

that the Court *may* authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter . . . ." (emphasis added)).

On this score, *Smith* is instructive.   In that case, the same Magistrate Court ordered the disclosure of grand jury instructions because, in its view, the government "ignore[d] [Defendant's] argument that the particularized need standard [did] not apply to her narrow request for the grand jury instructions."   105 F. Supp. 3d at 257 (quoting Rep't & Rec., at 9–10, ECF No. 428, (dated July 21, 2014)).   In other words, the Magistrate Court equated the government's disregard for an argument with the defendant's satisfaction of the particularized need standard.   Judge Skretny reversed:

> A magistrate judge's Decision and Order resolving a non-dispositive, pretrial matter in a criminal case is reconsidered by the district judge only when it has been established that it is clearly erroneous or contrary to law. See 28 U.S.C. 636(b)(1)(A); Fed. R. Crim. P. 59(a). In his 428 Report, Recommendation, and Order, the Magistrate Judge granted that portion of Defendant Simone Smith's 269 motion seeking disclosure of the legal instructions given to the grand jury. The Magistrate Judge did so principally on the ground that the government failed to respond to Defendant Smith's argument that the "particularized need" standard applicable to requests for grand jury disclosure did not apply to her request for grand jury instructions. (Docket No. 428, pp. 9-10.) The "particularized need" standard, however, applies. Rule 6 (e)(3)(E)(ii) of the Federal Rules of Criminal Procedure permits disclosure of a grand jury matter only when the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Otherwise, there is a presumption against disclosure of grand jury matters that can be overcome only by the demonstration of a "particularized need" for disclosure that "outweighs the government's interest in maintaining the continued secrecy of the grand jury proceeding."   *See United States v. Faltine*, No. 13-cr-315 (KAM), 2014 WL 4370811, at *5 (E.D.N.Y. Sept. 2, 2014) (citing cases). "Unspecific allegations of need or mere speculation are not adequate." *Anilao v. Spota*, 918 F. Supp. 2d 157, 173-74 (E.D.N.Y. 2013). This presumption extends to disclosure of grand jury instructions. *See United States v. Hoey*, No. S3 11-cr-337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (citing *United States v. Jailall*, No. 00 CR 069 EWS, 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000)); *see also*, *United States v. Caparotta*, 890 F. Supp. D 200, 209-10

(E.D.N.Y. 2012); *United States v. Paredes-Cordova*, No. S1 03 Cr. 987 (DAB), 2009 WL 1585776, at *2 (S.D.N.Y. June 8, 2009); *United States v. Wallach*, No. S 87 CR. 985 (RO), 1988 WL 140832, at *1 (S.D.N.Y. Dec. 16, 1988) (finding that defendant failed to show a particularized need for grand jury materials, including legal instructions). Here, Defendant Simone has failed to identify a specific, particularized need warranting the disclosure of the grand jury instructions. Speculation that the instructions to the grand jury may have been lacking or incomplete is insufficient. For the same reason, this Court finds no cause to conduct *in camera* review. The government's appeal is therefore GRANTED and Defendant Simone's 269 request for disclosure of the grand jury instructions is DENIED. SO ORDERED. Issued by William M. Skretny, Chief Judge on 11/19/2014. (MEAL) (Entered: 11/19/2014)

Text Order, ECF No. 482, (dated Nov. 19, 2014).

That decision makes sense. As the Court acknowledged, though Rule 6(e) may grant a judge the power to review or disclose grand jury minutes, that power is constrained by the particularized need standard that parties seeking disclosure must satisfy. *See id.* Thus, in that case, the government's inadequate briefing simply did not assist the defendant in carrying her burden in demonstrating a particularized need.[3]

The Magistrate Court's decision here is even more deficient. Whereas in *Smith* the government gave short shrift to an argument the defendant advanced, here neither party argued the basis the Magistrate Court concluded merited the *in camera* inspection of grand jury materials. *See* Oral Arg. Tran., at 103 ("I'm not addressing this in terms of whether there's evidence to support it, *I'm addressing it in terms of how was the jury instructed so that they could make this finding*." (emphasis added)); *see generally id.* (indicating the complete absence of any argument related to grand jury instructions). Because the Magistrate Court based his

---

[3] Ironically, in *Smith*, the Magistrate Court granted the defendant's motion (which was premised upon a magistrate court opinion) despite also taking notice of contrary district court authority because the government failed to adequately argue the issue. *See* Rep't & Rec., at 10, ECF No. 428, (dated July 21, 2014). Here, the Magistrate Court overlooked the authority cited by the government and invented an argument for the defendants to grant their motion.

holding on an issue the defendants never raised, it is axiomatic that the defendants could not have made (and did not make), "with particularity," a "showing of need for the transcripts" with respect to the jury instructions. *Douglas Oil Co.*, 441 U.S. at 221 (internal quotations omitted). In that respect, just as in *Smith*, this Court cannot say that the Magistrate Court applied the particularized need standard or that, if it did, it was the defendants who carried "the[ir] burden of persuasion." *Calk*, 87 F.4th at 186. On this basis alone, the Court should conclude that the Magistrate Court abused its discretion when it ordered the disclosure of grand jury minutes for *in camera* inspection.

However, putting that issue aside, it is also clear that, to the extent the Magistrate Court did apply the particularized need standard, its application was contrary to law. Once more, *Smith* is helpful. After Judge Skretny's reversal of the Magistrate Court's decision, the case was transferred to Judge Wolford, who oversaw the defendant's motion for reconsideration of Judge Skretny's decision. *See Smith*, 105 F. Supp. at 258. The defendant advanced two sets of arguments. First, the defendant argued that the particularized need standard did not apply to instructions given to the grand jury and, in the alternative, asked the Court to empower the Magistrate Court to review the instructions *in camera*. *See id.* at 259. Next, the defendant urged that she demonstrated a particularized need for disclosure of the grand jury's instructions because the statute under which she was indicted did not specify the element of knowledge or intent, which were necessary to sustain her conspiracy charge at trial. *Id.* at 261.

The Court disagreed with both contentions. For starters, the Court explained that "courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need." *Id.* (collecting cases).

Additionally, the Court concluded that the defendant failed to satisfy the particularized need requirement. *See id.* at 261–62. Specifically, the Court noted that "[t]he absence of detailed allegations regarding Defendant's alleged knowledge of the conspiracy is insufficient to create a particularized need" because the government "is not required to include in the indictment detailed allegations regarding a defendant's knowledge of a conspiracy." *Id.* The defendant's argument was particularly unpersuasive considering that "[t]he only evidence offered by [d]efendant supporting the proposition that the grand jury was incorrectly instructed is the indictment itself." *Id.* at 262. Stated otherwise, the Court concluded that the defendant failed to demonstrate a particularized need for the *instructions* because her arguments rested on the indictment's *allegations*. *See id.*

In this case, the Magistrate Court's decision barrels through that distinction and implicitly follows an opposite rationale: that an issue with an *allegation* satisfies the particularized need standard with respect to the inspection of *instructions*. *See* Oral Arg. Tran., at 103–04. Indeed, "[t]he only evidence offered by [the Magistrate Court] supporting the proposition that the grand jury was incorrectly instructed is the indictment itself." *Smith*, 105 F. Supp. 3d at 262. But, as in *Smith*, the indictment's allegations do not satisfy the particularized need inquiry as to the propriety of instructions.[4] *See id.* In that regard, a review of the instructions is not "narrowly tailored" to whatever concerns the Magistrate Court may harbor with respect to Overt Act ¶ 25, all but underscoring the Magistrate Court's error in creating the basis of disclosure without input or contestation from the parties. *U.S. ex*

---

[4]     As described *supra*, the Indictment itself refutes the defendants' claims of impropriety. The *actual basis* of the defendants' arguments—that Overt Act ¶ 25 reflects that the grand jury was presented with false evidence because Mr. Gerace or others plainly knew that Ms. Quinn was cooperating with the government prior to the submission of the defense witness list in June 2023—is plainly refuted by other allegations in the indictment showing that Mr. Gerace and others knew of Ms. Quinn's cooperation as early as February 2023 and certainly no later than early March 2023 when conspirators placed rats at her mother's residence.

*rel. Stone v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) ("Once the balancing test is completed, any order for release of grand jury transcripts must be narrowly tailored to reflect that the pages or lines released speak only to the established particularized need."); *accord The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1180 (10th Cir. 2011) (Gorsuch, J., concurring) (explaining that the party presentation principle and prudential doctrines protect courts "from improvident decisions").

Likewise, it is of no moment for the purposes of this appeal—or the underlying litigation—if the defendants (or the Magistrate Court) do not understand or agree with the grand jury's finding as to Overt Act ¶ 25. *See* Oral Arg. Tran., at 103–04 (wherein the Magistrate Court potentially indicated that it did not understand how the grand jury could have made a finding as to Overt Act ¶ 25). As the Supreme Court emphasized in *United States v. Williams*, courts must carefully identify the nature of alleged grand jury misconduct, because "a complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" 504 U.S. 36, 54–55 (1992). Such a challenge, "of course, "'would run counter to the whole history of the grand jury institution,'" as it would invite defendants and empower the courts to inspect grand jury minutes, thereby burning party and judicial resources by fishing for prosecutorial misconduct claims whenever there was purported confusion as to how the grand jury could have found certain facts. *United States v. Fisher*, 225 F. Supp. 3d 151, 166 (W.D.N.Y. 2016) (first quoting *Williams*, 504 U.S. at 55, and then quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)). Though that it precisely the species of argument that the defendants' advanced below, their incorrect assertions and misguided insinuations could not be, even if true, grist for a motion to dismiss. *See Williams*, 504 U.S. at 54–55 ("It would make little sense, we

think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. . . . Our words in *Costello* bear repeating: Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" (quoting *Costello*, 350 U.S. at 364)).

As a related matter, the Magistrate Court's decision flies in the face of grand jury practice.   As the *Smith* Court correctly recognized, the government is not required to provide a grand jury with legal instructions.   105 F. Supp. 3d at 260 (collecting cases).   The record is devoid of any evidence that the government instructed the grand jury as to the law, let alone "in terms of how . . . they could make [a] finding" as to Overt Act ¶ 25.   Oral Arg. Tran., at 104.   Had the Magistrate Court inquired, the government would have explained that it (1) does not instruct the grand jury to make particular factual findings; (2) consistent with *Smith*, that federal grand juries are not required to be instructed; and (3) does not, as a matter of course, instruct the jury on the law; and (3) does not presently possess transcripts of any instructions they might have received, as opposed to transcripts of witness testimony submitted to the grand jury.   The Magistrate Court's decision overlooks the foregoing hinges upon its speculation as to these facts—even though speculation is "wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e)."  *Smith*, 105 F. Supp. 3d at 260 (internal quotations omitted).

In sum, the Magistrate Court abused its discretion when it failed to address, much less apply, the particularized need standard.   Even if assuming *arguendo* that the Magistrate Court applied the particularized need standard, its application is contrary to law, and thus also an abuse of discretion.   Accordingly, the government respectfully asks that this Court

reverse the Magistrate Court's order requiring *in camera* inspection of the government's instructions.

> **B.    The Magistrate Court Abused its Discretion When it Based its Order on a Rationale Not Advanced by the Defendants.**

As alluded to *supra*, in unnecessarily broadening the defendants' arguments—and ordering the disclosure on a basis the defendants never raised—the Magistrate Court also abused its discretion by contravening foundational commitments of our adversarial system. In our system of adjudication, the parties "frame the issues for decision" and courts serve as "neutral arbiters of matters the parties present." *Sineneng-Smith*, 590 U.S. at 375 (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).   By cutting from whole cloth the "winning argument" used to erode both the grand jury's secrecy and the presumption of regularity, the Magistrate Court engaged in the very kind of transformative departure from the party presentation principle that the Supreme Court unanimously concluded merited reversal in *Sineneng-Smith* after the Ninth Circuit appointed three *amici* to brief and argue issues framed by the panel overseeing an appeal.   *See* 590 U.S. at 374–75, 380.

In fact, the circumstances here are worse: unlike in *Sineneng-Smith*, the government lacked an opportunity to explain either in writing or at oral argument why the Magistrate Court was incorrect to consider what, if any, instructions it provided the grand jury because the Magistrate Court never identified any concern regarding the instructions until the moment it announced its order.[5]   *See* Oral Arg. Tr., at 103.   Worse still, the government had no reason to contemplate that grand jury instructions would be in issue, as federal law does not require federal grand juries to be provided legal instructions.   But that's not all.   The

---

[5]    Indeed, the issue of the grand jury's instructions appeared for the first time in this litigation when the Magistrate Court issued its disclosure order.

Magistrate Court's departure from the parties' framing of the arguments is particularly abusive where, as here, the defendants bore the burden of demonstrating a particularized need. *See Douglas Oil Co.*, 441 U.S. at 223; *Calk*, 87 F. 4th at 186. By abandoning the party presentation principle and assuming the power to satisfy the particularized need standard using whatever argument it deemed fit, the Magistrate Court grabbed the laboring oar in this dispute and steered the defendants to success.

Controlling and persuasive precedent from the Supreme Court on down establishes that such a method of adjudication is doubly erroneous: it strays from the fundamental tenets of the American system of adjudication and effects improper burden shifting. *See id*.; *cf. In re TransCare Corp.*, 81 F. 4th at 59 (declining to address an abandoned issue under the party presentation rationale); *605 Fifth Prop. Owner, LLC v. Abasic, S.A.*, No. 22-3195, 2023 WL 4417343, at *2 (2d Cir. July 10, 2023) (invoking the party presentation principle to "limit [its] review to resolving the issue as presented"); *Howard v. City of Rochester*, No. 23-CV-6561-FPG-MJP, 2025 WL 289068, at *6 (W.D.N.Y. Jan. 24, 2025) (Pedersen, M.J.) ("In sum, while the Court will sometimes intervene to save a *pro se* litigant from shooting him or herself in the foot, it is not this Court's duty to intervene when a sophisticated litigant like the County of Monroe does so." (citing *Sineneng-Smith*, 590 U.S. at 375)); *United States v. Hicks,* No. 15-CR-33-RJA, 2024 WL 162880, at *7 (W.D.N.Y. Jan. 16, 2024) ("While pro se filings are subject to liberal standards of construction, those standards do not authorize a wholesale departure from the party-presentation principle that otherwise assigns to courts the role of neutral arbiter of matters the parties present." (internal quotations omitted)); *Off. of United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487, 502 (2024) (Jackson, J.) ("In sum, while the dissent invents new arguments to arrive at its favored outcome, we prefer to stick with the parties and

our controlling precedent."); *Cook v. United States*, 111 F.4th 237, 241 (2d Cir. 2024) (Sullivan, J., concurring in the order denying re'hrg *en banc*) ("Given that the appellants themselves did not conceive of their *Davis* challenges as assertions of Rule 11 error, the panel cannot be faulted for failing to reimagine the appellants' argument for them.   Indeed, the panel would likely have *abused its discretion* had it done so." (emphasis added)).

And unlike other cases where appeals involve *de novo* review, short of reversing, this appeal cannot cure or mitigate any prejudice resulting from the Magistrate Court's decision because this Court's review is constrained through Rule 59(a)'s highly deferential standards. *Cf. Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 356 n. 24 (2d Cir. 2021) (finding that the appellant's party-presentation argument had "some force" but concluded that "any prejudice to [the appellant] [was] mitigated by his full opportunity to be heard on this issue on appeal and th[e] [Second Circuit's] *de novo* review of the District Court's grant of *summary judgment*" (second emphasis added)); *See v. Gov't Emps. Ins. Co.*, No. 21CV547PKCJMW, 2023 WL 2731697, at *13 (E.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Milligan v. GEICO Gen. Ins. Co.*, No. 22-2950, 2025 WL 799276 (2d Cir. Mar. 13, 2025) ("[A]ny prejudice to Defendants from the purported violation of the party presentation principle has been mitigated by [their] full opportunity to be heard on this issue [ ] and this Court's de novo review of the R&R." (internal quotations omitted)).

In sum, the Magistrate Court's invented rationale for disclosing grand jury transcripts is far afield from the "modest" initiating role that the Supreme Court has blessed in limited circumstances.   *Sineneng-Smith*, 590 U.S. at 376.   As such, it reflects nothing short of an abuse of discretion requiring this Court's reversal.

**C.    The Magistrate Court's Errors Cumulatively Counsel in Favor of Reversal.**

Lastly, to the extent that none of the above-referenced errors require reversal (they each individually do), the aggregation of the errors does.   *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 147 (2d Cir. 2008) ("The cumulative error doctrine comes into play only where the total effect of the errors . . . found . . . cast[s] such a serious doubt on the fairness" of the proceedings (internal quotations omitted)).   Here, the Magistrate Court failed to apply the particularized need standard.   To the extent it can be said to have applied the particularized need standard, it did so on an invented basis that simultaneously deprived the government of an opportunity to respond and improperly shifted the burden away from the defendants.   Moreover, the Magistrate Court's rationale is plainly inconsistent with the well-reasoned analysis contained in *Smith* (which involved the reversal of this same Magistrate Court for committing a similar error).   Any one of these issues merits reversal but, combined, they should leave this Court with the unmistakable impression that an error occurred.

## IV.   Conclusion

For the reasons stated herein, the government respectfully requests that the Court reverse the Magistrate Court's disclosure order.

DATED:   Buffalo, New York, June 4, 2025

Michael DiGiacomo
United States Attorney

BY:    s/ CASEY L. CHALBECK
         s/ NICHOLAS T. COOPER
         s/ CAITLIN M. HIGGINS
         s/ JOSEPH M. TRIPI
         Assistant United States Attorney
         United States Attorney's Office
         Western District of New York
         138 Delaware Avenue
         Buffalo, New York 14202
         (716) 843-5881
         Casey.Chalbeck@usdoj.gov